[Civ. No. 45287. First Dist., Div. One. Oct. 23, 1980.]

JAMES H. BARON et al., Plaintiffs and Appellants, v.
COLONIAL MORTGAGE SERVICE CO. OF CALIFORNIA et al.,
Defendants and Respondents.

318

---

---

## COUNSEL

Robert S. Sturges and Caputo, Liccardo, Rossi & Sturges for Plaintiffs and Appellants.

Robert E. Weiss for Defendants and Respondents.

Dena R. Thaler as Amicus Curiae.

---

## OPINION

**NEWSOM, J.**—The present appeal—on essentially undisputed facts—is from a judgment after trial by court which denied appellants relief against a trustee who sold the real property of a debtor under a deed of trust at a foreclosure sale. The trustee refused to qualify appellants as bidders at the sale solely because their cashier's checks were payable, not to the trustee, but to themselves, and thus required indorsement over to the trustee. The single issue presented is whether that refusal by the trustee was a breach of his duty.

A brief procedural and factual recapitulation shows that appellants, James H. Baron and Dale Hutchins, are partners in a real estate investment business who brought an action for damages against Colonial

Mortgage Service Co. of California (respondent) and the secured creditor, Colonial Associates. Respondent was the trustee under a note secured by a deed of trust when the debtors defaulted.

After the prescribed reinstatement period had expired, notice of sale was duly published and the sale set for September 25, 1975, at 3:30 p.m. The sale was advertised as being at public auction to the highest bidder for cash payable at the time of sale.

On the day before the sale, appellant Baron called respondent in order to ask his "customary" three questions before a sale: (1) Is it still going to sale, and, if so, the opening bid? (2) Are there any IRS liens? and (3) Is there anything else I should know? Respecting the third question, respondent made no mention of any particular type of funds that should be brought to the foreclosure sale.

Appellants attended the sale ready to bid, bringing with them, consistent with what they regarded as standard practice at foreclosure sales (including those previously conducted by respondent), bank cashier's checks payable to themselves in a form suitable for indorsement over to the trustee. That these checks were negotiable is undisputed.

The crier of the sale, an agent of the Statewide Publications Service (who, in turn, were agents for respondent), while initially uncertain how to proceed, checked with his principal and announced that only cash or cashier's checks made payable to the trustee would be accepted as qualified bids.

There were approximately 15 persons present and presumably interested in the sale. Ten such persons approached the crier of the sale in an attempt to qualify as bidders; of the ten, only two were deemed qualified by the crier. A third bidder qualified after the bidding had begun, and ultimately qualified as the highest bidder.

Despite their rejection, appellants made an opening bid, then made a protest bid—unrecognized by the crier—of $100 over the highest qualified bid.

At trial, lengthy testimony was elicited from various industry experts concerning acceptable equivalents of cash. Based upon such testimony, the trial judge found it to be the custom and practice at foreclosure sales, including those of respondent, to accept cashier's checks made

payable *either* to the individual bidder or to the trustee, and found such checks to be an equivalent of cash. He concluded, however, that Civil Code section 2924h, subdivision (b), gives the trustee an absolute discretion to refuse any medium of payment other than cash. That conclusion is the crux of the issue on appeal and the subject of concern to industry representatives who have filed an exceptionally able *amicus* brief.

To repeat: The fundamental issue on appeal is whether Civil Code section 2924h, subdivision (b), vests absolute discretion in the trustee, or whether such discretion is circumscribed by a standard of reasonableness.

The section in controversy deals with the duties and requirements of a trustee in qualifying and conducting trustee sales. At the time of the events in question here, it read in pertinent part: "(b) At the trustee's sale the trustee shall have the right (1) to require every bidder to show evidence of his ability to deposit with the trustee the full amount of his final bid in cash, or the equivalent of cash in a form satisfactory to the trustee, prior to and as a condition to the recognizing of such bid, and to conditionally accept and hold these amounts for the duration of the sale, and (2) to require the last and highest bidder to deposit, if not deposited previously, the full amount of his final bid in cash, or the equivalent of cash in a form satisfactory to the trustee, immediately prior to the completion of the sale, the completion of the sale being so announced by the fall of the hammer or in other customary manner...."[1]

The trial court interpreted the words "in a form satisfactory to the trustee" modifying "the equivalent in cash" as a grant of absolute discretion in the trustee to reject any form of payment other than cash itself.

---

[1]Section 2924h was recently amended (Stats. 1979, ch. 1015, § 5, eff. Jan. 1, 1980). The applicable amendment substituted in the first sentence of subdivision (b) the phrase "the equivalent of cash, which may be advertised in the notice of sale, in a form *reasonably satisfactory* to the trustee to protect the interests of both the beneficiary and trustor," for the preamended language which reads as follows: "the equivalent of cash in a form *satisfactory* to the trustee."

By adding the term "*reasonably satisfactory*," it appears that the intent of the Legislature was either to inject or to clarify a requirement of reasonableness, thereby limiting the trustee's discretion. Our view remains that such a requirement was implied in the language of the preamended version of section 2924h, which of course governs this appeal.

Appellants challenge this interpretation, arguing that the trustee's discretion cannot be arbitrary, but must have some basis in reason. It thus becomes necessary to determine the legislative intent, and the purposes to be served by the subject legislation.

■ Originally, Civil Code section 2924 was introduced to prevent certain practices which resulted in manipulation of bidding at trustee sales. These practices included advancement of bids at a sale by one or more bidders, in order to eliminate other interested bidders followed by withdrawal of the high and next highest bids so that the successful bidder, frequently selected in advance from the circle of manipulators, acquired the property for the minimum amount owed the beneficiary. (Cf. Assem. Bill No. 1914 (1972 Reg. Sess.) July 20, 1972.)

The prevention of such abuses inures directly to the benefit of the trustor/debtor; indeed, our courts have construed Civil Code section 2924 as a statute restricting and limiting the exercise of private powers of sale for the benefit of the trustor/debtor. (*U.S. Hertz, Inc.* v. *Niobrara Farms* (1974) 41 Cal.App.3d 68, 87 [116 Cal.Rptr. 44]; *Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 877 [105 Cal.Rptr. 395].)

Civil Code section 2924h, regulating the manner of bidding at trustee sales, is essentially a supplemental enactment to Civil Code section 2924, which regulates the power of sale. Under accepted rules of construction, courts have required that a statute be construed with reference to the scheme of which it forms a part, in such a way as to achieve harmony among the parts. (*Prunty* v. *Bank of America* (1974) 37 Cal.App.3d 430, 436 [112 Cal.Rptr. 370].) Section 2924h must, therefore, also be construed as protective of the trustor/debtor in order to be consistent with the statutory scheme.

■ It is well established that a trustee's duty at a foreclosure sale is to obtain the highest possible price for the property consonant with the protection and preservation of the trustor/debtor's interest. (*Kleckner* v. *Bank of America* (1950) 97 Cal.App.2d 30, 33 [217 P.2d 28].) The beneficiary under a deed of trust is entitled to recover the balance of money owing on the original indebtedness, plus interest and expenses incurred while protecting the investment. The purpose of the sale is to satisfy the total indebtedness from cash or its equivalent bids. It is often the case, as here, that the trustee charged with the protection of the rights of the trustor/debtor, is also a subsidiary business entity of

the beneficiary/creditor. Thus, there is little or no motivation for the trustee to generate surplus funds over and above those due the foreclosing beneficiary for the benefit of the property owner.

If the "captive" trustee were armed with absolute discretion, the trustee and beneficiary might contrive to thwart any bidding at a foreclosure sale, thereby assuring the beneficiary of acquiring the property for the amount of the remaining indebtedness. Such a practice would, of course, be detrimental to the trustor/debtor's interest as well as contrary to the purpose of Civil Code section 2924, particularly in its current, amended form.

 In the present case, the trustee's agent summarily disqualified all but three of a large group of potential bidders merely because they had one rather than another form of, a commercially wholly acceptable, cash alternative.[2] The consequent reduction in the pool of bidders effected a reduction in otherwise potentially available funds at the expense of the trustor/debtor.

Since the trustee's sole obligation is to obtain the highest possible price, payable in "good" money, needed to satisfy the indebtedness owed the beneficiary and recover for the trustor as much equity as possible, discretion ought to be measured, not by absolute terms, but by whether its exercise serves to promote competitive bidding by reliable bidders to secure the best possible price. The exercise of reasonable business prudence on the part of the trustee in acceptance of cash equivalents would protect all parties under the statutory scheme, as the statute now expressly recognizes.

 It is conceded by the parties that the trustee under a deed of trust, while not a fiduciary, is the agent of both the beneficiary and the trustor. (*Lupertino* v. *Carbahal* (1973) 35 Cal.App.3d 742, 747 [111 Cal.Rptr. 112].) Courts have also enunciated a duty in the trustee in the conduct of a sale itself. "A sale under a power in a mortgage or trust deed must be conducted in strict compliance with the terms of the power. The sale must be made fairly, openly, reasonably, and with due diligence and sound discretion to protect the rights of the mortgagor and others, using all reasonable efforts to secure the best possible or reasonable price." (*Kleckner* v. *Bank of America, supra,* 97 Cal.App.2d

---

[2]It is not here suggested that the crier or his principal acted for any improper purpose.

30, 33.) That duty may thus fairly be said to extend to all participants in the sale, including prospective bidders.

■ Since the subject property has in fact been sold, and, after remodeling, resold, the issue is said by respondents to be moot. Appellants on the other hand claim that the trial court made no findings on the issue of damages, since the issue was never reached.

We are not bound by resolution of that issue, however, since "It is now established law that where, as in the cases at bench, issues on appeal affect the general public interest and the future rights of the parties, and there is reasonable probability that the same questions will again be litigated and appealed, an appellate court may, although the appeal be subject to dismissal, nevertheless adjudicate the issues involved." (*People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 468 [89 Cal.Rptr. 290].)

■ And, without expression of opinion concerning the proper measure of damages on the facts before us, we will observe that, equitably, appellants are entitled in any event to recover the reasonable amount of expenses paid or incurred in preparation for the sale. ■ In the future under the amended form of section 2924h, when a trustee breaches his duty to exercise reasonable discretion in qualifying bidders, the aggrieved party may seek injunctive relief restraining the sale and, under certain circumstances, rescission of an improperly conducted sale or such other relief as may be appropriate.

The judgment is reversed and remanded to the trial court with directions to proceed in a manner consistent with the views expressed herein.

Elkington, Acting P. J., and Grodin, J., concurred.