[No. F019330. Fifth Dist. Oct. 6, 1993.]

NEWHALL LAND AND FARMING COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
MOBIL OIL CORPORATION et al., Real Parties in Interest.

336

COUNSEL

Bright and Brown, James S. Bright, Maureen J. Bright and Susan D. Rich for Petitioners.

No appearance for Respondent.

McIntyre, Lubeck & Denney, Richard J. Denney, Jr., Eleanor F. Oths, Paul, Hastings, Janofsky & Walker, Richard J. Denney, Jr., Joseph P. Scully, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, David S. MacCuish and Edward J. Casey for Real Parties in Interest.

OPINION

FRANSON, J.*—

### STATEMENT OF THE CASE

Petitioner, Newhall Land and Farming Company (Newhall), seeks review of an order sustaining a demurrer without leave to amend to three of its causes of action against real parties in interest, Amerada Hess Corporation and Amerada Petroleum Corporation (collectively Amerada) and Mobil Oil Corporation (sued as Socony Mobil Company) and Mobil Exploration and Producing, U.S. Inc. (collectively Mobil). Although rulings on pleadings are not generally reviewed by way of a writ petition, this court has determined such review is appropriate here because the issue tendered is of widespread interest. (Cf. *Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1273 [258 Cal.Rptr. 66].)

Newhall is the current owner of real property which was previously the site of a natural gas processing plant. Newhall filed an action against Amerada and Mobil to recover damages stemming from the contamination of the soil and groundwater which occurred while Amerada and Mobil were operating this gas plant between 1950 and 1970. Newhall purchased the property in 1984.

The first amended complaint purports to state causes of action for continuing nuisance, continuing trespass, negligence, equitable indemnity, and recovery of costs pursuant to Health and Safety Code section 25363. Amerada and Mobil demurred to the nuisance, trespass, and negligence causes

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

of action. The trial court sustained this demurrer without leave to amend. The court found the nuisance cause of action was barred because "an owner cannot cause a nuisance to his own property because consent is a defense to this cause of action." The trial court found the trespass cause of action failed for the same reason, i.e., "Defendants' own use of their own land is not a trespass." On the negligence claim, the court found Mobil and Amerada did not owe a duty of care to petitioner, a future successor-in-interest, not to leave the land in a polluted condition.

For the reasons to be explained, we hold the trial court erred in its rulings and issue the writ.

## STATEMENT OF FACTS

Since this proceeding follows the sustaining of a demurrer to the complaint without leave to amend, the facts as alleged in the complaint must be regarded as true. (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].)

Mobil acquired the property in 1950 and built a natural gas processing plant on it. Mobil operated this gas plant until 1970 when it sold the property to Amerada. Amerada continued operating the gas plant for less than one year. Thereafter, the plant was partially dismantled and rendered inoperative.

In 1971, Amerada sold the property to a third party. In 1984, following several intervening owners, Newhall acquired the surface rights of the property. Newhall is a farming company and used water from this property in its farming operations.

During the time Mobil and Amerada operated the gas plant, they discharged hazardous substances onto the ground, knowing that these substances would pollute the soil and enter the groundwater. This discharge was expressly prohibited by three statutes: Fish and Game Code section 5650 et seq.; Health and Safety Code section 5410 et seq.; and Water Code section 13000 et seq. When the property was sold, neither Mobil nor Amerada disclosed the existence of the contamination on the site.

When Newhall acquired the property, there was no visible evidence of these prior discharges. At that time, Newhall had no way of knowing and did not suspect that the property was contaminated. Newhall discovered petroleum staining of the soil when removing the remaining concrete foundations from the property in August 1989. Further environmental testing revealed other contamination in the form of heavy metals and other volatiles in the water table beneath the property.

These pollutants continue to move through the soil and into the groundwater, causing new damage each day. As a result of the contamination, Newhall has been unable to sell this property.

## DISCUSSION

### I. *Newhall has stated a cause of action for nuisance.*

■ In the first amended complaint, Newhall alleges Mobil and Amerada have created and are responsible for a condition on the property which constitutes a private continuing nuisance. Newhall contends the hazardous substances unlawfully discharged by Mobil and Amerada are leaching through the property causing new and additional damage to the property daily. Thus, the contamination constitutes a continuing obstruction to Newhall's free use and enjoyment of the property. Further, Newhall states it was neither informed of, nor did it give consent to, the contaminants being on the property.

Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." ■ A nuisance may be a public nuisance, a private nuisance, or both. (*Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124 [99 Cal.Rptr. 350].) "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." (Civ. Code, § 3480.) Every other nuisance is private. (Civ. Code, § 3481.) However, "[a] private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." (Civ. Code, § 3493.)

■ Pollution of water constitutes a public nuisance. (*Carter* v. *Chotiner* (1930) 210 Cal. 288, 291 [291 P. 577]; *Selma Pressure Treating Co.* v. *Osmose Wood Preserving Co.* (1990) 221 Cal.App.3d 1601, 1619 [271 Cal.Rptr. 596].) In fact, water pollution occurring as a result of treatment or discharge of wastes in violation of Water Code section 13000 et seq. is a public nuisance per se. (Wat. Code, § 13050, subd. (m).)

■ Here, the first amended complaint alleges Mobil and Amerada discharged hazardous substances in violation of the applicable California law and that those substances have leached through the soil and polluted the groundwater. Thus, the complaint pleads facts which support the existence of a public nuisance. However, a public nuisance does not in itself create a private nuisance as well.

"[A] private nuisance is a civil wrong based on disturbance of rights in land while a public nuisance is not dependent upon a disturbance of rights in land but upon an interference with the rights of the community at large." (*Venuto v. Owens-Corning Fiberglas Corp.*, *supra*, 22 Cal.App.3d 116, 124.) Thus, a plaintiff may maintain a private nuisance action based on a public nuisance when the nuisance causes an injury to plaintiff's private property, or to a private right incidental to such private property. (*Id.* at p. 125.) Further, where the nuisance is a private as well as a public one, there is no requirement that the plaintiff suffer damage different in kind from that suffered by the general public. (*Id.* at p. 124.)

Newhall is in the business of farming and has farmed the property at issue, using water from the property. Newhall has been unable to sell this property because of the contamination and has spent money investigating this pollution. These allegations of injury to both Newhall and the property state a claim for a private nuisance. However, it must be determined whether Newhall can state a claim against Amerada and Mobil based on the creation of this nuisance.

Mobil and Amerada contend Newhall's nuisance claim fails because it does not allege an interference with an existing property interest, i.e., an interference which occurs contemporaneously with the creation or maintenance of the nuisance. Mobil and Amerada further argue that liability for a private nuisance requires an invasion of *another's* interest in the use and enjoyment of land. In other words, one cannot commit a nuisance to one's own property. This concept was articulated by the trial court as "an owner cannot cause a nuisance to his own property because consent is a defense to this cause of action."

In *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125 [281 Cal.Rptr. 827], the court was faced with the issue of whether the owners of real property could state a cause of action for nuisance against the party who leased the property from the prior owners and who allegedly contaminated the property with hazardous waste during the leasehold. The defendant lessee, Aerojet-General Corporation (Aerojet), claimed the complaint failed to state a cause of action for nuisance based on arguments similar to those set forth by Mobil and Amerada.

Aerojet argued that because the claim of nuisance was being made by a present owner of property for alleged injury to that property resulting from acts of a defendant committed on that very property, it was outside the area of nuisance. " 'In other words, conduct committed *on* a piece of land cannot be attacked as a nuisance to that land or the owner of it.' " (230 Cal.App.3d

at p. 1133.) Aerojet relied on general treatises and out-of-state authority to support this proposition.

The *Mangini* court rejected this argument, noting that California nuisance law is a creature of statute. ██ "The California nuisance statutes have been construed, according to their broad terms, to allow an owner of property to sue for damages caused by a nuisance created *on* the owner's property. Under California law, it is not necessary that a nuisance have its origin in neighboring property." (*Mangini* v. *Aerojet-General Corp.*, *supra*, 230 Cal.App.3d at p. 1134.) ██ Similarly here, Newhall is not precluded from stating a cause of action for nuisance on the ground that Mobil and Amerada could not cause a nuisance to their own property.

Aerojet further argued that one cannot be guilty of a nuisance unless one is in the position to abate it, i.e., currently has a possessory interest in the property. This analysis was also rejected by the *Mangini* court. ██ The court held, "Nor is it material that defendant allegedly created the nuisance at some time in the past but does not currently have a possessory interest in the property. '[N]ot only is the party who maintains the nuisance liable but also the party or parties who create or assist in its creation are responsible for the ensuing damages.' " (230 Cal.App.3d at p. 1137.)

██ Mobil and Amerada similarly argue a nuisance must interfere with an existing property interest and because Newhall had no property interest at the time of the allegedly illegal conduct, Newhall cannot state a nuisance cause of action against them. This is a variation on the argument made by Aerojet. Rather than claiming they cannot be held liable for nuisance because they no longer have an interest in the property, Mobil and Amerada contend they are not liable because Newhall did not have an interest in the property at the time the nuisance was created. However, this shift in focus does not alter the analysis. As noted by the *Mangini* court, under California law, both the parties who maintain the nuisance and the parties who create the nuisance are responsible for the ensuing damages.

Mobil and Amerada also rely on dicta in *Pinole Point Properties* v. *Bethlehem Steel Corp.* (N.D.Cal. 1984) 596 F.Supp. 283. There, the defendant used a waste disposal pond located on property which it owned and then sold that property to plaintiff. Plaintiff acquired the property with full knowledge of the existence of the waste disposal pond. The United States District Court for the Northern District of California dismissed plaintiff's state nuisance claim on the ground it was barred by the statute of limitations. Nevertheless, the court noted the claim also "would likely fail on the merits." The court stated "The plaintiff does not allege any facts which

would demonstrate that the defendant ever interfered with the property rights of another; only that the defendant disposed of waste on its own land and then sold the land. These allegations would not ordinarily state a claim in nuisance." (596 F.Supp. at p. 292, fn. 5.)

However, this discussion does not support Mobil and Amerada for several reasons. First, contrary to the statement in *Pinole Point Properties*, under California law, an owner of property may sue for damages caused by a nuisance created *on* the owner's property. (*Mangini* v. *Aerojet-General Corp.*, *supra*, 230 Cal.App.3d at p. 1134.) Second, in *Pinole Point Properties*, the plaintiff knew of the existence of the contamination before acquiring the property. Thus, the damage to the property caused by the defendant's use of the waste disposal pond could be factored into the terms of the purchase. In contrast here, Mobil and Amerada did not disclose the existence of the contamination when the property was sold. Consequently, the effect of Mobil and Amerada's unlawful discharge of hazardous materials into the soil could not be considered when the purchase was negotiated.

The basic premise underlying Mobil and Amerada's position is that, since they were the owners of the property at the time of the contamination, they could not be found liable to themselves for creating a nuisance. Consequently, Mobil and Amerada argue that Newhall, as a successor in interest, cannot state a nuisance claim against them arising out of that contamination. According to Mobil and Amerada, there cannot be a continuing nuisance where no nuisance existed at the inception of the wrongful condition. However, there is a fundamental flaw in this argument. Regardless of whether a potential plaintiff existed at the time of the contamination, the fact remains that Mobil and Amerada's conduct created a condition on the property which was, and which remains, injurious to health. Once Mobil and Amerada sold their interests without disclosing the contamination, other parties became involved who, upon discovery of the contamination, could bring a claim against Mobil and Amerada in an attempt to force them to accept responsibility for their creation of a nuisance. As noted above, in the context of this case, the time of the creation of the nuisance is immaterial with respect to Mobil and Amerada's liability.

The trial court analyzed the nuisance cause of action in terms of a "consent" defense based on a discussion in *Mangini* v. *Aerojet-General Corp.*, *supra*. However, the trial court misconstrued the *Mangini* court's discussion of consent. In *Mangini* the court stated ". . . where, as here, an owner of property seeks damages for creation of a nuisance by a prior lessee, the lessee has a defense that his use of the property was lawful and was authorized by the lease; i.e., his use of the property was undertaken with the

*consent* of the owner." (230 Cal.App.3d at p. 1138.) This statement does not mean "consent" is a defense to a nuisance claim in any context.

First, the *Mangini* court noted the conduct must have been lawful. Here, Newhall alleges Mobil and Amerada's conduct violated several California statutes in effect at the time.

Second, the *Mangini* court was discussing the conduct of a lessee, not an owner. As noted by the court, the absence of a consent defense for a lessee in certain situations would lead to absurd results. For example, if an owner leases property for the purpose of operating a quarry, it would be ludicrous to permit the owner to sue the lessee at the end of the lease term for having created the inevitable hole that was the object of the lease. However, it does not make sense to extend the application of this rule and find an owner can never be liable to a successor in interest for nuisance because the owner consented to his own use of the property. Thus, a "consent defense" should not exist in this factual context. Consequently, the trial court erred in absolving Mobil and Amerada from nuisance liability based on their "consenting" to their own unlawful acts.

## II. *Newhall has stated a cause of action for trespass.*

■ The first amended complaint alleges a cause of action for trespass based on the continuing presence of the contaminants on the property. The trial court sustained the demurrer to this cause of action on the ground that Mobil and Amerada's "own use of their own land is not a trespass." Since the cause of action for trespass is designed to protect *possessory* interests in land from unlawful interference, the trial court was correct that ". . . one cannot commit an actionable interference with one's own possessory right." (*Capogeannis* v. *Superior Court* (1993) 12 Cal.App.4th 668, 674 [15 Cal.Rptr.2d 796].) However, this conclusion does not resolve whether Newhall has stated a cause of action for a continuing trespass.

As noted by the court in *Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d at page 1148, a continuing trespass theory in a situation such as this, i.e., contaminants have been left on the property by a prior owner, is sanctioned by the Restatement Second of Torts. Section 161, subdivision (1) of the Restatement provides "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it." Under this definition, "tortious conduct" denotes that conduct, whether of act or omission, which subjects the actor to liability under the principles of the law of torts. (Rest.2d Torts, § 6.)

In *Capogeannis* v. *Superior Court, supra*, the plaintiffs, owners of property contaminated by underground fuel storage tanks, filed a complaint against the Spences, the prior owners of the property, and Tri-Pallet, Inc., a long-term tenant on the land. Based on *Mangini* v. *Aerojet-General Corp., supra*, the court found the plaintiffs had sufficiently pled a theory of civil recovery for nuisance against both the Spences and Tri-Pallet and for trespass against Tri-Pallet. However, the court concluded the plaintiffs could not state a trespass cause of action against the Spences.

The *Capogeannis* court did not explain the distinction between the Spences and Tri-Pallet with respect to their potential liability for a continuing trespass. However, since *Mangini* concerned the liability of a lessee, we can infer that the *Capogeannis* court concluded Tri-Pallet's status as a lessee was the distinguishing factor.

As to the Spences, the *Capogeannis* court held the cause of action failed because the plaintiffs had not sufficiently identified *tortious* conduct by the Spences to support a continuing trespass cause of action under section 161 of the Restatement Second of Torts. The court reasoned: "For want of a specifically identifiable plaintiff Spence's alleged participation in contaminating the soil and ground water can be considered at most a public nuisance, 'one which affects at the same time an entire community or neighborhood, or any considerable number of persons . . . .' (Civ. Code, § 3480.) Under California law a public nuisance will be a basis for *tort* remedies for personal harm or property damage only if the plaintiff can 'show special injury to himself of a character different in *kind*—not merely in degree—from that suffered by the general public.' [Citation.] Nothing implicit in the kind of contamination of one's own land alleged in this case necessarily identifies a particular plaintiff or connotes the kind of qualitatively different injury that would subject the actor to tort liability." (12 Cal.App.4th at p. 675.)

From this discussion, it is apparent the *Capogeannis* court's holding is based on its conclusion that a public nuisance is not a *tort* unless a private individual can also maintain the cause of action. However, contrary to this premise, one whose action or inaction causes a public nuisance is considered a tortfeasor and is subject to tort liability whether or not a private individual can also recover. (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 619 [200 Cal.Rptr. 575].) In fact, the state may recover damages for injury to the groundwater on the theory of public nuisance. (*Selma Pressure Treating Co.* v. *Osmose Wood Preserving Co., supra*, 221 Cal.App.3d at pp. 1614-1619.) Thus, the creation of a public nuisance qualifies as "tortious" conduct under section 161, subdivision (1) of the Restatement Second of Torts. (See Rest.2d Torts, § 161, subds. (1)(2), coms. b, d, pp. 289-291.)

Here, as discussed above, when Mobil and Amerada discharged the hazardous substances, they created a public nuisance. Thus, the contaminants which remain on the property were tortiously placed there. Whether a private person could have also been able to maintain a cause of action for public nuisance at that time is immaterial. Consequently, Newhall has stated a cause of action for a continuing trespass on this theory. As discussed above in the context of the nuisance cause of action, because it is the prior owner being charged with the commission of this tort, as opposed to a lessee of the property, the concept of "consent" is inapplicable.

### III. *Newhall has stated a cause of action for negligence.*

The first amended complaint bases the negligence cause of action on two theories: (1) negligence per se based on statutory violations pursuant to Evidence Code section 669; and (2) breach of the duty to disclose a material and concealed defect, i.e., the contamination, to subsequent purchasers. The trial court sustained the demurrer as to the negligence per se theory on the ground that Newhall, as a successor in interest, was not one of the class of persons for whose protection the statutes alleged to have been violated were adopted. As to the failure to disclose the contamination, the court found the rule of caveat emptor relieved Mobil and Amerada from liability to subsequent owners for the condition of the property.

"Evidence Code section 669 codifies the doctrine of negligence per se based on a violation of a statute or regulation." (*Lua* v. *Southern Pacific Transportation Co.* (1992) 6 Cal.App.4th 1897, 1901 [9 Cal.Rptr.2d 116].) That section provides, in part, "(a) The failure of a person to exercise due care is presumed if: (1) He violated a statute . . . ; (2) The violation proximately caused . . . injury to . . . property; (3) The . . . injury resulted from an occurrence of the nature which the statute . . . was designed to prevent; and (4) The person suffering . . . the injury to his . . . property was one of the class of persons for whose protection the statute . . . was adopted."

All four elements must be shown in order for a claim of negligence per se to succeed. The first two are matters for the trier of fact and the second two are to be determined by the court as a matter of law. (*Lua* v. *Southern Pacific Transportation Co.*, *supra*, 6 Cal.App.4th at pp. 1901-1902.) At issue here is whether Newhall is one of the class of persons for whose protection Health and Safety Code section 5411 and Water Code section 13000 et seq. (and its predecessor) were adopted.

Health and Safety Code section 5411 provides, in part, "No person shall discharge . . . waste . . . in any manner which will result in contamination,

pollution, or a nuisance." From 1949 until 1969, Health and Safety Code section 5410, defined "pollution" as "an impairment of the quality of the waters of the State by sewage or industrial waste to a degree which does not create an actual hazard to the public health but which does adversely and unreasonably affect such waters for domestic, industrial, agricultural, navigational, recreational or other beneficial use." Effective January 1, 1970, "pollution" was defined as "an alteration of the quality of the waters of the state by waste to a degree which unreasonably affects: (1) such waters for beneficial uses, or (2) facilities which serve such beneficial uses." Additionally, Water Code section 13050, subdivision (f) provides: " 'Beneficial uses' of the water of the state that may be protected against quality degradation include, but are not limited to, domestic, municipal, agricultural and industrial supply; power generation, recreation; aesthetic enjoyment; navigation; and preservation and enhancement of fish, wildlife, and other aquatic resources or preserves."

Newhall has alleged it is an agricultural user of water and has used water in and from the property at issue in its farming operation. The discharges are alleged to have occurred between 1950 and 1970. Although as the trial court concluded, the statutes were undoubtedly designed to protect the quality of California's water resources "for the beneficial use of the public at large," this conclusion does not in and of itself require a finding that the purpose of the legislation is exclusively " 'to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public . . . .' " (*United Farm Workers of America* v. *Superior Court* (1975) 47 Cal.App.3d 334, 341 [120 Cal.Rptr. 904], quoting Rest.2d Torts, § 288.) Rather, the statutes' specific reference to agricultural use leads to the conclusion that Newhall, as a farming operation, can state a cause of action under the negligence per se doctrine. Regardless of Newhall's status as a successor in interest to Mobil and Amerada, its property was injured by the unlawful discharges, and, as a farmer, it is within one of the classes of persons for whose protection the various water quality statutes were adopted. Thus, the trial court erred in sustaining the demurrer to the negligence cause of action on the ground Newhall could not state a claim under Evidence Code section 669.

 The trial court also erred in sustaining the demurrer without leave to amend on the ground the caveat emptor doctrine precluded Newhall from stating a cause of action based on breach of the duty to disclose a material and concealed defect. The trial court based its conclusion on the general rule that former owners of land are not liable for injuries sustained after the property is transferred. As to Newhall's allegations of a breach of the duty to disclose the existence of a concealed defect, the court determined that this

exception to the general rule applied only if a dangerous condition caused additional damage to a person or property.

██ In *Preston* v. *Goldman* (1986) 42 Cal.3d 108 [227 Cal.Rptr. 817, 720 P.2d 476], the California Supreme Court agreed with the Restatement Second of Torts proposal regarding predecessor landowners' liability. In the Restatement view, termination of liability occurs upon transfer of control, i.e., the doctrine of caveat emptor is generally followed, except under specified circumstances. (42 Cal.3d at p. 115.) One of the exceptions " 'is that the vendor is under a duty to disclose to the vendee any hidden defects which he knows or should know may present an unreasonable risk of harm to persons on the premises, and which he may anticipate that the vendee will not discover.' " (*Ibid.*)

*Preston* v. *Goldman, supra,* concerned liability for personal injury caused by a condition on the real property. However, there is also a duty to disclose facts affecting the value of the property itself. ██ "In the context of real estate transactions, '[i]t is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property . . . and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.]' " (*Barnhouse* v. *City' of Pinole* (1982) 133 Cal.App.3d 171, 187-188 [183 Cal.Rptr. 881].) "Undisclosed facts are material if they have a significant and measurable effect on market value. [Citation.] A breach of the duty to disclose gives rise to a cause of action for rescission or damages." (*Karoutas* v. *Homefed Bank* (1991) 232 Cal.App.3d 767, 771 [283 Cal.Rptr. 809].) ██ Newhall seeks damages based on Mobil and Amerada's alleged breach of this duty. Mobil and Amerada argue Newhall can recover based on the alleged nondisclosure only if it pleads and proves fraud. However, while other cases have been concerned with allegations of fraud or deceit in this context, no court has specifically limited such a situation to a cause of action for fraud.

Newhall's cause of action is founded on negligence. ██ "It is hornbook law that '[a]ctionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury. . . .' " (*Felburg* v. *Don Wilson Builders* (1983) 142 Cal.App.3d 383, 393 [191 Cal.Rptr. 92].)

In *Karoutas* v. *Homefed Bank, supra,* 232 Cal.App.3d 767, the court found the plaintiffs had stated facts sufficient to raise a common law duty to disclose in the defendant where plaintiffs' complaint alleged: (1) the property purchased had been and was subject to substantial, permanent and

progressive soil movement; (2) this condition subjected the residence on the property to severe forces and stresses; (3) the defendant knew of these conditions but suppressed and failed to disclose them; (4) at the time plaintiffs purchased the property they did not know of these conditions and would not have purchased the property had they known; and (5) the plaintiffs could not and did not inspect the property prior to purchase.

Here, Newhall has alleged: (1) the property's soil and groundwater have been contaminated with hazardous substances due to Mobil's and Amerada's unlawful discharges; (2) this condition has unreasonably affected the groundwater's use for domestic, industrial, agricultural and other beneficial use and thus, has materially lessened the value of the property; (3) Mobil and Amerada knew of this contamination but did not disclose the condition of the property to subsequent purchasers; (4) at the time Newhall acquired the property, it was unaware of the contamination. There was no visible evidence of contamination, and Newhall was not made aware of any facts or information which would have caused suspicion about or knowledge of contamination, and no such information was available to Newhall. Newhall also alleges it has been damaged in that it will incur costs to evaluate, test and remove the contamination, and further that it has not been able to sell the property due to the contamination.

Through these allegations, Newhall has covered all the elements the *Karoutas* court found necessary to state a cause of action except for the element of causation, i.e., that Newhall would not have purchased the property had the contaminated condition of the property been disclosed. It can be inferred that this is true. Nevertheless, Newhall needs to amend its complaint to make this causation allegation.

Mobil argues this disclosure rule "relates solely to the seller's disclosure to the buyer who purchased the land from that seller," i.e., privity of title is a prerequisite to recovery. However, this is not the law. " ' "An action for deceit does not require privity of contract." ' " (*Barnhouse* v. *City of Pinole, supra,* 133 Cal.App.3d at p. 191.)

In *Barnhouse* v. *City of Pinole, supra,* the developer of suburban tract homes, Smith, failed to disclose preexisting slides, seeps and springs to the original purchasers. The court held it was not necessarily fatal to the plaintiff's claim for fraudulent concealment that he purchased the property at issue from the original purchaser and did not deal directly with Smith. The court reasoned the jury could have inferred that Smith failed to make the initial disclosures with the intention that subsequent purchasers would also act in ignorance. It was foreseeable that some of these homes would change

hands. "While an affirmative misrepresentation might not be repeated [citation], a nondisclosure must necessarily be passed on." The court noted it would be anomalous if liability for damages resulting from fraudulent concealment were to vanish simply because of the fortuitous event of an intervening resale. Further, such a rule does not extend the vendor's liability at all—it merely fails to reduce it. (133 Cal.App.3d at pp. 192-193.)

 Here, although concerned with a cause of action for negligence based on breach of the duty to disclose as opposed to fraud, the same rationale should apply. When Mobil and Amerada sold this property, it was foreseeable that subsequent sales would take place, and, consequently, the nondisclosure would be passed on. The original purchasers neither suffered damage nor had the knowledge to disclose, and thus it was Newhall who was damaged by the initial nondisclosure. No sound reason exists for relieving Mobil and Amerada from liability for their alleged breach of the duty of disclosure merely because of the fortuitous event of intervening sales. Thus, the lack of privity does not bar Newhall's claim.

In sum, if Newhall can amend its complaint to allege that the nondisclosure was a legal cause of its damages, it can state a negligence cause of action based on breach of the duty to disclose.

Finally, Mobil argues permitting a landowner to advance common law claims of nuisance, trespass and negligence is unwarranted in view of the substantial statutory law that applies to this issue. However, Mobil neither claims, nor has a court held, that these statutes comprise the exclusive remedy under circumstances such as those alleged here. A complaint may state multiple legal theories upon which recovery might be predicated for one claim for relief. (Cf. *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].)

In conclusion, we want to emphasize that this opinion is limited to the facts alleged in the first amended complaint. Thus, our holding that petitioner has stated causes of action against Mobil and Amerada for nuisance, trespass and negligence is dependent on our regarding as true the allegations that Mobil and Amerada illegally discharged hazardous substances onto the ground knowing these substances would pollute the soil and enter the groundwater and then failed to disclose the existence of the contamination when the property was sold.

## DISPOSITION

Let a writ of mandate issue directing the respondent court to vacate its orders of February 3, 1993, and February 5, 1993, and to enter an order

overruling the demurrer of real parties in interest Amerada and Mobil. Costs to be awarded to petitioners.

Stone (W. A.), Acting P. J., and Harris, J., concurred.

The petitions of real parties in interest for review by the Supreme Court were denied December 30, 1993. Lucas, C. J., and Arabian, J., were of the opinion that the petitions should be granted.